Rodolfo Dávila, Carlos Suárez, Francisco Bastón y Manuel Grau, peticionarios, v. Hon. Charles E. Foote, en su carácter de Juez de la Corte de Distrito del Distrito Judicial de Mayagüez, P. R., recurrido.

No. 52.—*Sometido:* Marzo 9, 1931. *Resuelto:* Mayo 27, 1932.

*Oscar Souffront, E. Báez García, José Carbia Miranda* y *José Sabater,* abogados de los peticionarios, respectivamente; *R. A. Gómez, Fiscal,* abogado del querellado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Los peticionarios fueron acusados de infringir la ley para proteger el comercio contra coacciones y monopolios, aprobada por la Legislatura insular en marzo 14, 1907, leyes de ese año, página 328, en efecto porque los vendedores al por mayor de gasolina en Mayagüez, acusados en este caso, tra-

maron una combinación a virtud de la cual convinieron en un precio fijo para la venta de tal gasolina y se negaron a vender al precio corriente e igualmente se negaron a vender a todo aquel que no pagara el precio fijado por uno de ellos y convenido por los otros o por todos ellos, y realizaron otros actos tendentes a evitar la competencia. Se presentó una excepción previa ante la Corte de Distrito de Mayagüez, que fué desestimada. En la corte inferior se discutieron varias cuestiones que no han sido objeto de la petición en este caso y, por tanto, hallamos innecesario considerarlas.

■ Los peticionarios han presentado una solicitud de auto inhibitorio en este Tribunal fundándose en que la Corte de Distrito de Mayagüez carecía de jurisdicción para oír y determinar el caso toda vez que la materia de monopolios y restricciones del comercio ya estaba cubierta por estatutos federales sobre el asunto, a saber, la llamada Ley Sherman de 1890, 26 Statutes-at-large, página 209, y la Ley Clayton, 38 Statutes-at-large, página 730. Las disposiciones de la Ley Sherman que se alegan ser aplicables, leen como sigue:

"Sección 2.—Toda persona que monopolice o trate de monopolizar, o se combine o conspire con cualquier otra persona o personas para monopolizar cualquier parte del negocio o comercio entre los distintos estados, o con naciones extranjeras, será considerada culpable de *misdemeanor*, y, convicta que fuere de ello incurrirá en multa máxima de $5,000 o cárcel por un término máximo de un año, o ambas penas, a discreción de la corte.

"Sección 3.—Todo contrato, combinación en forma de 'trust', o de alguna otra índole, o conspiración, para restringir los negocios o el comercio de cualquier territorio de los Estados Unidos, o del Distrito de Columbia, o para restringir los negocios o el comercio entre tal territorio y cualquier otro, o entre dicho territorio o territorios y cualquier estado o estados o el Distrito de Columbia, o con naciones extranjeras, o entre el Distrito de Columbia y cualquier estado o estados o naciones extranjeras, por la presente se declara ilegal. Toda persona que celebre semejante contrato o que se dedique a tal combinación o conspiración, será culpable de *misdemeanor*, y convicta que fuere, será castigada con multa que no excederá de

$5,000 o con prisión por un término máximo de un año, o con ambas penas a discreción de la corte.''

Hubo alguna discusión respecto a si procedería en este caso un auto inhibitorio, pero no tenemos duda de que si la Corte de Distrito de Mayagüez en verdad carecía de jurisdicción, cabría el auto.

■ ■ ■ Los peticionarios se fundan en el caso de *El Pueblo* v. *Galanes et al.*, 15 D.P.R. 405, donde dijimos:

"Hay también otro punto que debemos observar de paso y es que la Ley Federal contra los *Trusts*, de 2 de julio de 1890, U. S. Statutes at Large, vol. 26, p. 209, tiene también aplicación a los territorios. Según la sección 3ª de la misma los contratos que tiendan a restringir el comercio en el Distrito de Columbia y en los territorios están prohibidos; pero esa ley no dice nada en relación con los monopolios. Creemos que la Ley Federal sería de aplicación en todos aquellos casos que la misma prevee, y por consiguiente, que la corte inferior no tenía jurisdicción para conocer de una causa con respecto a contratos sobre restricción del comercio. En otras palabras, que aquella parte de la ley de marzo de 1907, que trata de prohibir contratos en restricción del comercio está en contra de la Ley Orgánica, toda vez que esa ley dispone que tendrán aplicación a esta Isla todas aquellas leyes de los Estados Unidos que no sean localmente inaplicables. Sección 14 de la Ley Orgánica. En este sentido se dictó la resolución en el caso de *Territory* v. *Alexander*, 89 Pac. 514.''

Al tiempo de ese fallo, esta Corte tenía alguna idea de que Puerto Rico, aunque no un territorio incorporado, debía ser considerado como un territorio de los Estados Unidos, al que podrían ser aplicables los estatutos generales. Después de las decisiones de la Corte Suprema de los Estados Unidos en los casos de *People* v. *Muratti*, 245 U. S. 639; y *Balzac* v. *Porto Rico,* 258 U. S. 298, creemos que la jurisprudencia establece que Puerto Rico, aunque organizado, no es un territorio incorporado.

En cada una de nuestras leyes orgánicas aparece lo siguiente:

"Las leyes estatutarias de los Estados Unidos que no sean localmente inaplicables, salvo lo que en contrario se dispusiere en la pre-

sente, tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos, excepción hecha de las Leyes de rentas internas; *Disponiéndose, sin embargo,* que en lo sucesivo todos los impuestos que se recauden con arreglo a las Leyes de rentas internas de los Estados Unidos sobre artículos producidos en Puerto Rico y transportados a los Estados Unidos, o consumidos en la Isla, ingresarán en el Tesoro de Puerto Rico.'' Art. 14 del Acta Foraker; Art. 9 del Acta Jones.

Bajo las precitadas decisiones de la Corte Suprema de los Estados Unidos, una ley general de los Estados Unidos aplicable a los ''territorios'' no incluiría un territorio no incorporado como Puerto Rico a menos que el Congreso manifestara tal intención. El caso de *González* v. *People of Porto Rico,* 51 Fed. (2d) 61, también parece ser aplicable.

Convenimos con la corte inferior en que la Ley Sherman no es aplicable a Puerto Rico por sus términos. Nada hallamos en sus disposiciones que demuestre que el Congreso tuvo la intención de abarcar un delito perpetrado en Puerto Rico.

La corte inferior también llamó la atención hacia el hecho de que en casi toda ley federal que el Congreso se ha propuesto extender a Puerto Rico, se han usado las palabras ''Porto Rico'', o ''posesiones insulares'', o algún otro término. La corte citó las siguientes leyes: Ley de febrero 12, 1915 (Leyes de Puerto Rico de 1930, página 105); Ley de marzo 4, 1915 (Leyes de 1930, página 107); Ley de agosto 10, 1917 (Leyes de 1917, tomo II, página 71); Ley de octubre 6, 1913 (Leyes de 1917, tomo II, página 161); Ley de mayo 4, 1916 (Leyes de 1917, tomo II, página 69); Ley de marzo 4, 1929 (Leyes de 1930, página 119); Ley de febrero 27, 1921 (Leyes de 1930, página 107); Ley de octubre 28, 1919 (Leyes de 1923, página 97); Ley de septiembre 21, 1922 (Leyes de Puerto Rico de 1930, página 109); Ley de enero 28, 1915 (Leyes de 1930, página 101).

En relación con la Ley Clayton bastará decir que los de-

litos por ella comprendidos no fueron imputados, y así lo resolvió la corte inferior, por la acusación en este caso.

De acuerdo con nuestras varias cartas orgánicas, designada la primera como la Ley Foraker y la segunda como la Ley Jones, a la Legislatura de Puerto Rico se le dan los mismos poderes generales que pueda tener cualquiera legislatura de los Estados Unidos, y, por tanto, la de Puerto Rico tiene el derecho de aprobar una ley contra monopolios y restricciones del comercio en forma similar que el Congreso de los Estados Unidos o la legislatura de cualquier estado podría hacerlo a menos, tal vez, que un estatuto federal claramente cubriera el terreno.

Decimos "tal vez," porque no estamos plenamente convencidos de que la Ley Federal y la local no podrían coexistir y que una persona no pudiera ser procesada por un delito contra la ley local así como contra la ley federal. En otras palabras, tenemos ahora algunas dudas respecto a si la Ley Sherman o la Clayton, aunque se hicieran propiamente extensivas a Puerto Rico, impedirían que la Legislatura aprobara una ley similar.

*Debe anularse el auto inhibitorio expedido.*

El Juez Asociado Señor Córdova Dávila no intervino.