THE NATIONAL CITY BANK OF NEW YORK, demandante y apelante, *v.* MANUEL V. DOMENECH, Tesorero de Puerto Rico, demandado y apelado.

No. 6142.—*Sometido:* Noviembre 15, 1933. *Resuelto:* Junio 22, 1934.

*Hartzell, Kelley & Hartzell* y *R. O. Fernández,* abogados de la apelante; *Hon. Procurador General Benjamin J. Horton* y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

The National City Bank of New York radicó una demanda en la Corte de Distrito de San Juan contra Manuel V. Domenech, Tesorero de Puerto Rico, en reclamación de $55,018.73 pagados bajo protesta, intereses legales y costas.

Alegó que era una asociación bancaria nacional organizada de acuerdo con las leyes de los Estados Unidos de América, con oficina principal en Nueva York y autorizada para hacer negocios en Puerto Rico.

Que en marzo, 1931, presentó al Tesorero la planilla de su propiedad a los efectos de la contribución que debía imponérsele y el Tesorero en octubre 27, 1931, fijó su capital tasable empleado en Puerto Rico en $2,658,040, así:

| | | |
|---|---:|---:|
| Terreno: 9,465.12 metros cuadrados | | $123,390.00 |
| Terreno: 2,174.60 cuerdas | | 52,650.00 |
| Edificios: | | 392,940.00 |
| Total inmuebles | | $568,980.00 |
| Otra propiedad personal | $1,993,820.00 | |
| Otros muebles | 95,240.00 | |
| Total muebles | | $2,089,060.00 |
| Total general | | $2,658,040.00 |

Que esa tasación se hizo no obstante haber el Banco comunicado por informe adicional al Tesorero que siendo como es una asociación bancaria nacional y pagando como paga contribución en Puerto Rico sobre su ingreso neto, sólo podía imponérsele contribución en esta isla por sus propiedades inmuebles en ellas situadas.

Que de la tasación del Tesorero apeló para ante la Junta de Revisión e Igualamiento y la Junta declaró sin lugar la apelación y entonces, actuando bajo compulsión y temor de embargo de sus propiedades, el 9 de abril de 1932 pagó bajo protesta $55,018.73 de la contribución que se le impuso. Los otros $14,196.61 de dicha contribución, correspondiendo a los

bienes inmuebles que figuran en la tasación, los pagó voluntariamente.

Y que la ley que lo exime del pago de toda otra contribución que no sea la impuesta a su propiedad inmueble situada en Puerto Rico, lo es la Sección 548, Título 12, del Código de los Estados Unidos que transcribe íntegramente en la demanda.

En resumen, el demandante sostuvo que de acuerdo con la ley nacional sólo podía imponérsele contribución en Puerto Rico por los $568,980 en que se valuó su propiedad inmueble situada en la Isla, estando exenta de tributación la "otra propiedad personal" y los "otros muebles" que en la Isla tiene y que se tasaron en $2,089,060.

El demandado alegó que la demanda no aducía hechos suficientes para determinar una causa de acción y así lo resolvió la corte por sentencia de junio 25, 1932, contra la cual interpuso el Banco demandante el presente recurso de apelación, señalando en su alegato la comisión de ocho errores, a saber:

"1.—La Corte de Distrito cometió error al tomar como uno de los fundamentos de su resolución, el no haber en la demanda alegación alguna de que las disposiciones de la ley federal sobre tributación de bancos nacionales sean aplicables a Puerto Rico.

"2.—La Corte de Distrito cometió error al resolver que la ley federal sobre tributación de bancos nacionales es solamente aplicable a los 'estados'.

"3.—La Corte de Distrito cometió error al aplicar a este caso la doctrina del caso de Dávila vs. Corte de Distrito, resuelto por esta Hon. Corte Suprema, en lo que se refiere a la aplicabilidad en Puerto Rico de estatutos federales.

"4.—La Corte de Distrito cometió error al resolver que la ley federal de bancos nacionales equipara las dependencias o posesiones insulares con los países extranjeros en cuanto a tributación de dichos bancos.

"5.—La Corte de Distrito cometió error al resolver que 'si el Gobierno Federal no puede en forma alguna declarar a una institución o asociación bancaria nacional exenta de pagar tributos en

un país extranjero, tampoco lo pudo hacer por implicación con las dependencias o posesiones insulares.'

''6.—La Corte de Distrito cometió error al resolver que la vigencia en Puerto Rico del Código Político desde 1902 en materia de tributación y la regla de uniformidad de tributación contenida en el Acta Orgánica, hacen inaplicables en Puerto Rico las disposiciones de los estatutos federales sobre tributación de bancos nacionales.

''7.—La Corte de Distrito cometió error al resolver que las disposiciones de los estatutos federales sobre tributación de bancos nacionales no son aplicables en Puerto Rico.

''8.—La Corte de Distrito cometió error al no resolver que si las disposiciones de estatutos federales sobre tributación de bancos nacionales no son aplicables en Puerto Rico, entonces un banco nacional no es tributable en forma alguna en Puerto Rico.''

Para fundar su sentencia, emitió la corte de distrito una opinión de la que copiamos lo que sigue:

''La ley en que se basa el demandante, es la sección 548 del título 12 del Código de los Estados Unidos que aparece en la página 367 de la obra United States Code Annotated, título 12. Esta sección se copia toda en la demanda y a poco que nos fijemos en el encabezamiento de la misma, se verá que va dirigida exclusivamente a los 'estados' y que a estos organismos del gobierno se refiere y aplica. El párrafo inicial de la sección dice como sigue: 'La Legislatura de cada estado puede determinar y dirigir de acuerdo con los preceptos de esta sección,' la manera y sitio de imponer contribuciones a todas las acciones de las asociaciones bancarias nacionales localizadas dentro de sus límites'; y completando el artículo, el Congreso autoriza a los estados: 1.—para imponer contribución sobre las acciones, o, 2.—para incluir los dividendos derivados de las mismas en el ingreso tributable del dueño o tenedor de las acciones, o, 3.—para imponer contribución sobre los ingresos netos de tales asociaciones. El párrafo tercero del artículo que estudiamos dispone textualmente que nada de lo preceptuado exentúa de contribuciones la propiedad real de las asociaciones bancarias para fines de tasación en cualquier estado o subdivisión del mismo, en la misma extensión y de acuerdo con el valor en que la demás propiedad real se tase para dichos fines contributivos. Pero no hay alegación alguna de que estas disposiciones del artículo 548 se apliquen a Puerto Rico, y tampoco lo dispone la ley en artículo alguno de la misma. El privilegio de exención tributaria a favor de los bancos nacionales se dirige a las legislaturas de los estados o a las subdivisiones de los mismos. La

contribución sobre la propiedad en Puerto Rico se cobra de acuerdo con los preceptos del Código Político. Este cuerpo legal está en vigor desde el año 1902, con las enmiendas que al mismo le ha introducido la Legislatura Insular. En marzo 2 de 1917 se aprobó por el Congreso de los Estados Unidos una ley titulada 'Ley para proveer un Gobierno Civil para Puerto Rico, y para otros fines,' en la que se confiere a la Legislatura Insular el poder para imponer contribuciones con la limitación de que las leyes al efecto serán uniformes. Cuando se aprobó esta ley en 1917, ya estaba en vigor el Código Político, y este cuerpo de ley se ratifica por el artículo 57 de la Ley Orgánica de marzo 2 de 1917. Recientemente nuestro más alto tribunal al decidir el caso de Dávila v. Corte de Distrito, en mayo 27 último, sentó la doctrina de que si un estatuto federal no contiene disposición expresa de que es aplicable a Puerto Rico, se entenderá que no lo es. Cita también algunos casos insulares esta decisión del Supremo, y por último, puso de manifiesto la circunstancia elocuentísima de que cada vez que el Congreso Federal se ha propuesto extender alguna ley federal a Puerto Rico, lo ha hecho usando las palabras 'Puerto Rico,' o posesiones insulares o en alguna otra forma. La ley de bancos que estamos discutiendo, dispone también en su sección 601 que cualquier asociación bancaria nacional que posea un capital y dividendos de más de $1,000,000.00, puede establecer sucursales en países extranjeros o dependencias, o posesiones insulares de los Estados Unidos para el desarrollo del comercio extranjero, y también para actuar como agente fiscal de los Estados Unidos. Esta sección aparece en la página 484 de la obra que antes citamos. Claramente se ve que la intención del Congreso ha sido equiparar las dependencias o posesiones insulares con los países extranjeros, y si el Gobierno Federal no puede en forma alguna declarar a una institución o asociación bancaria nacional exenta de pagar tributos en un país extranjero, tampoco lo pudo hacer por implicación con las dependencias o posesiones insulares. Si tal hubiera sido su intención, lo hubiera dicho de modo específico y claro. El artículo 209 del Código Político impone al Tesorero el deber de tasar toda propiedad que no esté expresamente exenta de tributos, y en el ejercicio de tal derecho bien pudo el Tesorero imponer la contribución que resiste el demandante.''

■■ Convenimos con el apelante en que no era necesario alegar expresamente en la demanda que las disposiciones del artículo 548 del Código de los Estados Unidos eran aplicables a Puerto Rico.

Como se dice en Corpus Juris, resumiendo la jurisprudencia:

"Conforme se demuestra en otro sitio, todas las cortes estaduales toman conocimiento judicial de los estatutos públicos de los Estados Unidos. Por consiguiente, no es necesario alegar la existencia de un estatuto federal a fin de invocar el beneficio del mismo en una acción entablada ante una corte estadual. Las leyes del Congreso no son leyes extranjeras sino que son leyes de la nación y no como las leyes de estados vecinos que deben ser alegadas y probadas a fin de poderse acoger a las mismas." 59 C. J. 1198.

"Cuando un estatuto público es aplicable a un caso basta con que la alegación de la parte que desea descansar en el mismo aduzca los hechos que hagan caer el caso dentro del estatuto; y no es necesario exponer el título de la ley o su número o la fecha de su aprobación o designarlo en alguna otra forma o aun referirse a él. Sin embargo, es indispensable que la alegación aduzca hechos que demuestren una causa de acción o una defensa bajo el título a fin de invocar el beneficio del mismo." 59 C. J. 1199.

Y convenimos también con el apelante en que el estatuto de que se trata no se aplica solamente a los estados ya admitidos como tales al seno de la Unión, si que rige además en los territorios. Así lo resolvió desde hace muchos años la Corte Suprema de los Estados Unidos en el caso *Talbott* v. *Silver Bow County*, 139 U. S. 438, en el que decidió, copiando del resumen:

"Los territorios poseen la misma facultad que los estados de imponer contribuciones a los bancos nacionales.

"El artículo 1003, capítulo 53 de la división quinta de los Estatutos Revisados del territorio de Montana, tal cual fué enmendado por la Ley de febrero 22, 1881, Leyes de 1881, p. 67, no está en conflicto con la sección 5219 de los Estatutos Revisados.

"Bajo el sistema territorial general, conforme expresan las distintas cartas orgánicas, el poder de imponer contribuciones es absoluto, salvo las restricciones impuestas por la Constitución y por las leyes del Congreso."

En el curso de la opinión la corte por medio de su Juez Sr. Brewer se expresó así:

"Estas diversas disposiciones, diseminadas en todo el estatuto respecto a bancos nacionales, dan énfasis a lo que la naturaleza del sistema implica—la intención de crear un sistema de bancos nacionales coextensivo con los límites territoriales de los Estados Unidos, que funcionen uniformemente dentro de esos límites, a fin de establecer en todos los Estados Unidos bancos con la garantía que un examen nacional otorga, y proveer moneda de valor uniforme, lo mismo en Arizona que en Nueva York, lo mismo en el territorio que en el estado. En un sistema nacional de tal naturaleza y de funcionamiento tan uniforme y universal en todos los límites territoriales del país, antes de que cualquier sección del estatuto que lo cree sea tachada de establecer un discrimen y privilegios y cargas con motivo de la localidad, su contexto exige imperativamente tal interpretación. Si se alegara que el mismo permitía que se impusiera una contribución local al este de las Montañas Alleghanïes y que lo impedía al oeste, aun si se admitiera que el Congreso tenía facultad con respecto a tal discrimen, el artículo invocado para justificar tal contención tendría que ser claro e imperativo en su contexto. Las diferencias provenientes de la misma adaptación a estatutos locales es una cosa, mientras que el discrimen por razón de la localidad u organización política es otra, esencialmente distinta. No está en conflicto con la naturaleza nacional del sistema de que los bancos de los varios estados y territorios puedan cobrar y recibir un tipo de interés autorizado por los estatutos locales; eso equivale meramente a la adaptación del sistema a las leyes y costumbres de los distintos estados; pero militaría enteramente en contra de su naturaleza nacional si los bancos organizados bajo el mismo estuvieran sujetos a que se les impusiera una contribución local en una parte de la Unión y estuvieran exentos en cualquiera otra parte. Ni ligeramente debe imputarse tal intención al Congreso.

*     *     *     *     *     *     *

"Además, aunque la palabra Estado se usa a menudo para distinguirla de Territorio, sin embargo, en su sentido público general, y como se usa algunas veces en los estatutos y los procedimientos del gobierno, tiene el significado más amplio de una comunidad política separada que incluye el Distrito de Columbia y los territorios, así como aquellas comunidades políticas conocidas como Estados de la Unión. Tal uso de la palabra Estado ha sido reconocido en las decisiones de esta corte. Así, en el antiguo caso de Hepburn v. Ellzey, 2 Cranch, 445, 452, el Juez Presidente Marshall observó: 'Se alega por el demandante que el Distrito de Columbia es una sociedad política separada; y que es, por lo tanto, un estado con-

forme a las definiciones de los escritores sobre ley general. Esto es verdad.' En Metropolitan Railroad v. District of Columbia, 132 U. S. 1, 9, el Juez Bradley, hablando a nombre de la corte, declaró que 'es indudablemente cierto que el Distrito de Columbia es una comunidad política separada en cierto sentido, y que en ese sentido puede ser denominado un Estado.' Y en el caso de Geofrey v. Riggs, 133 U. S. 258, 268, se dió una interpretación similar al uso de la palabra Estado, y en una cláusula que parecía llevar en su faz un significado más reducido que el lenguaje usado en la sección 5219, supra. La cláusula figuraba en un tratado entre Francia y los Estados Unidos, y decía así: 'En todos los Estados de la Unión, cuyas leyes existentes lo permiten, en tanto en cuanto dichas leyes permanezcan en vigor, los ciudadanos franceses gozarán el derecho de poseer propiedad personal y real con el mismo título y de igual manera que los ciudadanos de los Estados Unidos.' En presencia de este lenguaje, la palabra 'Estado' parecería referirse no a una comunidad política en general, sino a aquellas comunidades particulares que componen los Estados de la Unión; sin embargo, se sostuvo que incluía el Distrito de Columbia, en una opinión en que el Juez Field se expresó así: 'Este artículo no ha sido felizmente redactado. Deja en duda lo que se significó por ''Estados de la Unión.'' Ordinariamente se sostendría que estas palabras se aplican a aquellas comunidades políticas que ejercen varios atributos de soberanía y que componen los Estados Unidos, para distinguirlas de las municipalidades organizadas conocidas como Territorios y el Distrito de Columbia. Y sin embargo, comunidades separadas, con gobierno local e independiente, son a menudo descritas como Estados, aunque la extensión de su soberanía política esté limitada en sus relaciones con un gobierno superior o con otros países. Halleck Int. Law. c. 3, párrafos 5, 6 y 7. El término es usado en la jurisprudencia general y por los escritores sobre derecho público como significando sociedades políticas organizadas con un gobierno establecido. Dentro de esta definición el Distrito de Columbia, bajo el gobierno de los Estados Unidos, es tan Estado como cualquiera de aquellas comunidades políticas que componen los Estados Unidos'.''

Refiriéndose a Puerto Rico la propia Corte Suprema de los Estados Unidos ha resuelto:

''Puede acertadamente decirse que Puerto Rico es un territorio enteramente organizado, mas no un territorio incorporado a los Estados Unidos, y no hay razón para que no se resuelva que Puerto

Rico es un territorio tal como el comprendido en la sección 5278.'' Kopel v. Bingham, 211 U. S. 468, 476.

''Somos de opinión que la ley es aplicable a Puerto Rico. Es cierto que la palabra 'posesiones' de los Estados Unidos no se usa de igual modo que en la Ley de Responsabilidad (Liability Act). Sin embargo, la ley provee que las leyes anteriores que ella enmienda 'serán aplicables a porteadores públicos por ferrocarril en los territorios y en el Distrito de Columbia,' etc. Aunque para todos los fines la Isla de Puerto Rico no ha sido plenamente incorporada a los Estados Unidos, ella no es evidentemente un territorio extranjero, como tampoco lo son sus ciudadanos. González v. Williams, 192 U. S. 1, 15. Su organización en muchos aspectos es idéntica a la de aquellas entidades políticas conocidas por territorios. Tiene una legislatura territorial y un sistema territorial de cortes. Por la sección 14 de la Ley Foraker de abril 12, 1900, 31 Stat., 77, 80, c. 191, 'las leyes estatutarias de los Estados Unidos, que no sean localmente inaplicables . . . tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos, excepción hecha de las leyes de rentas internas'.'' Am. R. R. Co. of Porto Rico v. Didricksen, 227 U. S. 145, 148.

Y esta misma Corte Suprema de Puerto Rico, no ha mucho, en el caso de *The Federal Land Bank of Baltimore* v. *Corte de Distrito de Aguadilla,* 45 D.P.R. 205, 214, 216, por medio de su Juez Córdova dijo:

''La palabra 'estado' puede referirse a un estado de la Unión americana dentro de la constitución y a una denominación política debidamente organizada, no necesariamente como estado ni como territorio o distrito bajo el gobierno de los Estados Unidos.

\*       \*       \*       \*       \*       \*       \*

· ''Puerto Rico es una entidad política soberana. Tiene su Gobernador, Legislatura, Poder Judicial, y en general todos los atributos de un organismo político independiente. Ha sido declarado territorio organizado y es un Estado de la Unión Americana en el sentido amplio de la palabra, . . .''

Ahora bien, no es sólo a virtud de lo expuesto que puede sostenerse que la ley está en vigor en Puerto Rico. Rige como consecuencia de lo prescrito por el Congreso en el artículo 9 de nuestra Carta Orgánica, a saber:

"Artículo 9.—Las leyes estatutarias de los Estados Unidos que no sean localmente inaplicables, salvo lo que en contrario se dispusiere en la presente, tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos, excepción hecha de las Leyes de rentas internas; *Disponiéndose, sin embargo,* que en lo sucesivo todos los impuestos que se recauden con arreglo a las Leyes de rentas internas de los Estados Unidos sobre artículos producidos en Puerto Rico y transportados a los Estados Unidos, o consumidos en la Isla, ingresarán en el Tesoro de Puerto Rico."

Nada podemos percibir que haga que la ley de que se trata sea localmente inaplicable y no se nos ha citado ni conocemos ley alguna del Congreso que directa o indirectamente disponga que dicha ley no rija en Puerto Rico. Al contrario, el propio juez sentenciador se refiere en su opinión a la sección 601 de la misma que autoriza a cualquier asociación bancaria nacional que posea un capital de más de un millón de dólares para establecer sucursales en países extranjeros o en las posesiones insulares y para actuar como agente fiscal de los Estados Unidos, aunque sostiene que ello demuestra que la intención del Congreso fué la de equiparar las posesiones insulares a los países extranjeros.

Siendo una ley estatutaria de los Estados Unidos, no era necesaria en verdad disposición especial alguna para que rigiera en Puerto Rico. En tal virtud la especial disposición que contiene en tanto en cuanto es aplicable a Puerto Rico creemos que sólo puede interpretarse en el sentido de que la intención del Congreso fué la de equiparar los bancos nacionales en las posesiones insulares y en los países extranjeros en cuanto a los requisitos de capital y condición de actuar como agentes fiscales de los Estados Unidos, y nada más.

El hecho de que el banco funcione como funciona en esta Isla de acuerdo con la ley por medio de una sucursal, no convierte la sucursal en una entidad distinta a la del banco de tal manera que haga inaplicable la ley invocada a los efectos de la imposición de la contribución. En el caso de *Sokoloff* vs. *The National City Bank of New York,* 224

New York Supplement 102, confirmado en 227 New York Supplement 907, se resolvió que si bien una sucursal de un banco nacional establecida de acuerdo con las secciones 601 a 605 del título 12 del Código de los Estados Unidos, es una entidad separada del banco principal en lo que se refiere a transacciones de negocios (*business transactions*), sin embargo, no es una agencia independiente, sino que está sujeta a la supervisión del banco principal, al cual pertenece la propiedad y el activo (*property and assets*) de la sucursal y el cual también es últimamente responsable por las deudas de la sucursal.

Tampoco hay fuerza en el argumento de que la tasación se hizo siguiendo los preceptos del Código Político aprobado por la Legislatura de la Isla ya que las leyes de Puerto Rico rigen en tanto en cuanto no se opongan a las del Congreso.

Recientemente la Corte de Circuito de Apelaciones del Primer Circuito, en mayo 18, 1934, resolviendo un caso procedente de la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, igual al presente, No. 2896, *The National City Bank of New York,* demandante y apelante, *v. Manuel V. Domenech, Tesorero,* demandado y apelado, dijo:

"Como Nueva York, donde el banco demandante está situado, es el estado o subdivisión política al cual se ha dado permiso para imponer la contribución contra el banco de conformidad con el artículo 5219, la contribución impuesta contra sus bienes personales por la isla de Puerto Rico no estaba autorizada. Ni expresa ni implícitamente el Congreso ha autorizado jamás que se fijen tales contribuciones a una institución bancaria nacional, y no había razón para creer, de un examen del artículo 320 del Código Político de Puerto Rico de marzo 1, 1902, tal cual fué enmendado por la Ley de septiembre 3, 1910, (Estatutos Revisados de 1911 (2972) artículo 320), que la isla de Puerto Rico tuviera por miras imponer tal contribución. Todo lo que puede colegirse de esa sección del Código es que Puerto Rico se proponía fijar una contribución a las acciones de instituciones bancarias existentes por autoridad de los Estados Unidos 'situadas en Puerto Rico y haciendo negocios dentro de esa isla,' conforme estaba autorizada a hacerlo por el artículo 5219. Pero en este caso Puerto Rico ni siquiera trató de tasar las acciones

del banco por la sencilla razón de que la institución bancaria no estaba domiciliada en Puerto Rico y por consiguiente las acciones no estaban allí de tal suerte que pudiera imponerles una contribución.''

Habiendo llegado a las anteriores conclusiones, bastará consignar en cuanto al caso de *Dávila* v. *Corte,* 43 D.P.R. 554, que dicho caso tiene su fisonomía especial y se sostiene por sus propios fundamentos, y aunque entendemos que la corte de distrito dió a la jurisprudencia en él establecida un alcance que no tiene, para evitar ulteriores confusiones diremos que todo lo que en el mismo pueda encontrarse que sea contrario a lo que aquí se resuelve, debe entenderse derogado.

Resta sólo considerar una circunstancia especial que concurre en este caso, a saber, si por el hecho de haber el banco demandante en la planilla que rindiera al Tesorero enviado los datos referentes a toda su propiedad en Puerto Rico, está impedido de reclamar contra la tasación que de toda esa propiedad se hizo y de la consiguiente imposición de contribuciones sobre ella.

El banco alegó haberlo hecho así por error y haber aclarado debidamente el asunto antes de que la tasación se hiciera.

Bajo las circunstancias del caso, no constituye impedimento para su ulterior reclamación la anterior actuación del banco.

''Se ha resuelto que el capital de un banco no está sujeto al pago de contribuciones estaduales. Si el banco dió a conocer su capital para fines contributivos, el mismo no está impedido ahora de negarse a pagar la contribución. Ello equivaldría a hacer una lista de bienes exentos de contribución, y no hay razón alguna de justicia o de política pública que impida al banco negarse a pagar la misma. Cooley, Tax'n, 263, 264; Dunnel Manuf'g Co. v. Inhabitants of Pawtucket, 7 Gray, 277; City of Charlestown v. Middlesex Co. Com'rs, 109 Mass. 270.'' Brown v. French, 80 Fed. 166, 168.

En tal virtud, disponiendo expresamente la sección 548, Título 12 del Código de los Estados Unidos de América,

vigente en Puerto Rico que: ''La legislatura de cada estado puede determinar y ordenar, sujeta a las disposiciones de esta sección, la forma y lugar de imponer contribuciones a las acciones de instituciones bancarias nacionales situadas dentro de sus límites. Los varios estados pueden (1) imponer contribuciones sobre dichas acciones, o (2) incluir dividendos derivados de las mismas en los ingresos tributables de un dueño o tenedor de las mismas, o (3) fijar contribuciones a los ingresos netos de tales instituciones, o (4) de conformidad o en armonía con su ingreso neto, siempre que se cumplan las siguientes condiciones: 1. (*a*) la imposición por un estado de cualquiera de las cuatro formas de contribución arriba expuestas excluirá las demás. . . . 3. Nada de lo aquí contenido se interpretará en el sentido de eximir los bienes inmuebles de asociaciones del pago de contribuciones en cualquier estado o subdivisión de éste, hasta el límite que, de acuerdo con su valor, se fijen contribuciones sobre. sus bienes inmuebles;'' estando situado el banco nacional demandante en el estado de Nueva York, habiendo extendido sus negocios a Puerto Rico y habiendo Puerto Rico cobrádole contribuciones sobre la base de su ingreso neto, sólo podía imponerle además contribución sobre sus bienes inmuebles en la isla situados. En su consecuencia, la contribución que le impuso sobre su otra propiedad personal no estaba autorizada por la ley.

*Debe revocarse la sentencia apelada y devolverse el caso a la corte de distrito de su origen para ulteriores procedimientos no inconsistentes con los principios establecidos en esta opinión.*