THE UNITED THEATRES, INC., FAFAEL RAMOS COBIÁN, EDUARDO G. GONZÁLEZ, JULIO R. BRUNO y CHARLES S. GRAHAM, peticionarios, v. LA CORTE DE DISTRITO DE SAN JUAN y SUS JUECES CARLOS LLAUGER DÍAZ, ANGEL R. DE JESÚS, PABLO BERGA y EL PUEBLO DE PUERTO RICO, demandados.*

No. 986.—*Sometido:* Julio 20, 1934. *Resuelto:* Diciembre 10, 1934

* NOTA DEL REPÓRTER: La Orden que se revisa y anula en este procedimiento fué dictada por el Juez de la Corte de Distrito de San Juan, Hon. C. Llauger Díaz.

726

*J. Henri Brown, C. Ruiz Nazario, G. E. González y G. Benítez Gautier,* abogados de los peticionarios; *Marcelino Romaní, Fiscal de Distrito de San Juan,* abogado de El Pueblo de Puerto Rico; *Martínez Nadal, Navarro Ortiz & Llorens Torres,* abogados del Interventor Rengel Dávila.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El Pueblo de Puerto Rico entabló demanda solicitando la expedición de un mandamiento de *injunction* y otros remedios de conformidad con una ley de la Legislatura Insular intitulada "Ley para proteger el comercio contra coacciones y monopolios", aprobada en 14 de marzo de 1907 (Leyes de ese año, pág. 328). La corte de distrito expidió una orden restrictiva provisional y una orden para mostrar causa por la cual la misma no debía continuar en vigor. En respuesta a la orden para mostrar causa los demandados impugnaron la jurisdicción de la corte y solicitaron se anulara la orden restrictiva provisional. La corte se negó a esto basada en el caso de *Dávila* v. *Corte de Distrito de Mayagüez,* 43 D.P.R. 554.

En el caso de Dávila este tribunal, refiriéndose a su decisión anterior en el caso de *El Pueblo* v. *Galanes,* 15 D.P.R. 390, dijo:

"Al tiempo de ese fallo, esta Corte tenía alguna idea de que Puerto Rico, aunque no un territorio incorporado, debía ser con-

siderado como un territorio de los Estados Unidos, al que podrían ser aplicables los estatutos generales. Después de las decisiones de la Corte Suprema de los Estados Unidos en los casos de People v. Muratti, 245 U. S. 639; y Balzac v. Porto Rico, 258 U. S. 298, creemos que la jurisprudencia establece que Puerto Rico, aunque organizado, no es un territorio incorporado.

"En cada una de nuestras leyes orgánicas aparece lo ·siguiente:

" 'Las leyes estatutarias de los Estados Unidos que no sean localmente inaplicables, salvo lo que en contrario se dispusiere en la presente, tendrán el mismo efecto y validez en Puerto Rico que en los Estados Unidos, excepción hecha de las leyes de rentas internas . . .' Art. 14 del Acta Foraker; Art. 9 del Acta Jones.

"Bajo las precitadas decisiones de la Corte Suprema de los Estados Unidos, una ley general de los Estados Unidos aplicable a los 'territorios' no incluiría un territorio no incorporado como Puerto Rico a menos que el Congreso manifestara tal intención. El caso de González v. People of Porto Rico, 51 Fed. (2d) 61, también parece ser aplicable.

"Convenimos con la corte inferior en que la Ley Sherman no es aplicable a Puerto Rico por sus términos. Nada hallamos en sus disposiciones que demuestre que el Congreso tuvo la intención de abarcar un delito perpetrado en Puerto Rico."

La Ley Sherman, suplementada como lo fué en 1914 por la Ley Clayton, cubre todo el campo de la ley local. La cuestión en controversia es si la misma es o no "localmente inaplicable." Después de haber hecho una ulterior consideración del asunto nos es imposible adherirnos a la conclusión llegada en el caso de *Dávila* v. *Corte de Distrito*.

Es "Ley establecida que Puerto Rico, aunque territorio organizado, no es un territorio incorporado." De ello no se desprende que "las leyes estatutarias de los Estados Unidos" deben considerarse como "localmente inaplicables" en ausencia de una intención contraria de parte del Congreso al tiempo de aprobar la ley en cuestión.

En *Balzac* v. *People of Puerto Rico,* 258 U. S. 298, la cuestión a resolver fué "si aquella parte de la Enmienda VI a la Constitución que provee que en todas las causas criminales el acusado tendrá derecho a ser juzgado pronta y públi-

camente por un jurado imparcial del estado y distrito donde se hubiera cometido el delito, cuyo distrito será previamente reconocido por la ley, era aplicable a Puerto Rico." Ya se había resuelto que ésta y otras disposiciones constitucionales relativas a juicios por jurado eran aplicables, bien *ex proprio vigore* o como resultado de acción congresional, a procesos criminales en los "territorios de los Estados Unidos," pero que no tenían el efecto de limitar los poderes del Congreso al legislar para territorios no incorporados. Más de 15 años antes de la fecha en que se emitió la decisión en el caso de *Balzac* v. *People of Puerto Rico* y más de una década antes de aprobarse la Ley Jones, la Corte Suprema, en *Rassmussen* v. *United States,* 197 U. S. 516, 519, había dicho:

"En el presente caso el gobierno no negó que de regir la Enmienda VI, delitos de la índole del que aquí se procesa podían solamente ser juzgados por un jurado del derecho común. El gobierno, además, no discutió la verdad fundamental y obvia de que la Constitución de los Estados Unidos prevalece doquiera es aplicable. Por tanto, se trata de sostener la validez de la disposición en cuestión, basada en el argumento de que la Enmienda VI a la Constitución no era aplicable al Congreso al legislar para Alaska. Y esto descansa sobre dos contenciones que procederemos a considerar separadamente.

"1.—*Alaska no estaba incorporada a los Estados Unidos y por ende la Sexta Enmienda no obligaba al Congreso al legislar para Alaska.*

"Si se admite la premisa, es decir, el status de Alaska, la conclusión que de ella se desprende queda establecida por las anteriores resoluciones de esta corte. En el caso de Dorr v. United States, 195 U. S. 138, la cuestión en disputa fué si la Enmienda VI era obligatoria para el Congreso al legislar para las Islas Filipinas. Aplicando los principios que indujeron a la mayoría de los jueces que concurrieron en el caso de Downes v. Bidwell, 182 U. S. 244, a creer que la cláusula de uniformidad de la Constitución era inaplicable a Puerto Rico y siguiendo la resolución enunciada en Hawaii v. Mankichi, 190 U. S. 197, se resolvió que si bien a virtud del tratado con España las Islas Filipinas habían entrado bajo la soberanía de los Estados Unidos y estaban sujetas a su dominio como una dependencia o posesión, esas Islas no habían sido incor-

poradas a los Estados Unidos como parte de los mismos y, por tanto, el Congreso, al legislar para ellas, estaba sujeto solamente a las disposiciones de la Constitución aplicables a territorios que ocuparan tal relación. El poder de adquirir territorios sin incorporarlos a los Estados Unidos como parte integrante de los mismos, según hemos dicho, fué sostenido por el razonamiento expuesto en la opinión emitida por tres, quizá cuatro, de los jueces que concurrieron en la sentencia dictada en el caso de Downes v. Bidwell, siendo dicho razonamiento en efecto adoptado en el caso de Dorr como base de la resolución allí emitida, y diciendo la corte (pág. 143):

" 'Hasta el momento que el Congreso crea prudente incorporar a los Estados Unidos territorio cedido por tratado, consideraremos que es ley establecida por aquella decisión (Downes v. Bidwell) que el territorio debe gobernarse por el poder existente en el Congreso de adoptar leyes para tales territorios, sujetas a aquellas restricciones constitucionales sobre los poderes de dicho cuerpo que sean aplicables a la situación.'

· "Y en vista del status de las Filipinas se resolvió que la Enmienda VI no era aplicable a dichas Islas y en su consecuencia que al legislar el Congreso para ellas no estaba obligado por las disposiciones de dicha enmienda. Para nada serviría expresar nuevamente los fundamentos que sostienen esta conclusión y nos conformaremos con citar el resumen hecho por la corte en la opinión del caso de Dorr, como sigue (pág. 149):

" 'Llegamos a la conclusión de que la facultad de gobernar territorio—que se halla implícita en el derecho de adquirirlo y que le ha sido otorgada al Congreso por la sección 3 del artículo IV de la Constitución—no importa las otras limitaciones a que pueda estar sujeto y cuyo alcance debe ser resuelto conforme surgieren las cuestiones, no exige que dicho cuerpo adopte para territorio cedido, que no ha sido hecho parte de los Estados Unidos mediante acción congresional, un sistema de leyes que incluya el derecho a juicio por jurado, y que la Constitución, sin que exista legislación y por su propio vigor, no lleva tal derecho a territorios así situados'."

En el caso de Rassmussen la controversia terminó inmediatamente que se demostró que Alaska era un territorio incorporado y que las disposiciones de la Constitución eran, por tanto, aplicables. En el caso de Balzac la controversia igualmente concluyó al demostrarse que el Congreso en 1917 no había convertido a Puerto Rico, que ya era un territorio

enteramente organizado, en un territorio incorporado. En el presente caso el resultado depende de otras consideraciones.

Si es cierto que el Congreso no indicó en la Ley Sherman que las palabras "cualquier territorio de los Estados Unidos" tenían el propósito de incluir territorio no incorporado, tal omisión es cuestión de menor importancia. No obstante, podemos hacer constar de paso que la Ley Sherman fué aprobada en 1890, o sea unos diez años antes de acentuarse la cuestión relativa al status de territorio no incorporado. Las palabras "cualquier territorio de los Estados Unidos" naturalmente incluirían cualquier territorio posteriormente adquirido y organizado. Tomando en consideración el hecho de que, conforme se indica en el caso de Balzac "la distinción entre adquisición e incorporación no fué considerada como importante o por lo menos . . . no fué plenamente entendida", quizá es una inferencia lógica presumir que el Congreso tuvo la intención de incluir toda clase de territorio posteriormente adquirido y organizado. Es muy cierto que no hay más prueba de la intención de excluir territorio no incorporado posteriormente adquirido y organizado que la que existe de una intención de incluir tal territorio en la frase "cualquier territorio de los Estados Unidos". Para los fines de esta opinión podría admitirse, sin resolverlo, que el Congreso en 1890 no tuvo la intención de incluir en la frase "cualquier territorio de los Estados Unidos" territorio no incorporado posteriormente adquirido. La cuestión en controversia ahora es si la Ley Sherman es localmente inaplicable dentro del significado de esa frase, tal cual la misma ha sido usada en nuestras dos Cartas Orgánicas. Con alguna vacilación hemos llegado a la conclusión de que "no es localmente inaplicable."

El Congreso en 1900, al igual que en 1917, estaba al tanto del hecho de que Puerto Rico no era un territorio incorporado. En la Carta Foraker, al igual que en la Ley Jones, fué "conveniente evitar hacer obligatorio un sistema de jurado en un país hispano y de derecho civil hasta que éste lo deseara." *Balzac* v. *Porto Rico*, supra, pág. 311. No obstante, el Con-

greso creyó que por lo menos algunas de las "leyes estatutarias de los Estados Unidos no eran localmente inaplicables." De lo contrario, no hubiese provisto, como lo hizo, en ambas Cartas Orgánicas que "las leyes estatutarias de los Estados Unidos que no sean localmente inaplicables . . . tendrán la misma fuerza y vigor en Puerto Rico que en los Estados Unidos." También creyó que tal disposición quizá sería deseable en un territorio no incorporado y al mismo tiempo no serlo en otro. De ahí la disposición expresa contenida en la Carta Orgánica de las Filipinas, aprobada en 1902, al efecto de que el artículo 1891 de los Estatutos Revisados de 1878 no debía ser aplicable a dichas Islas. *Dorr* v. *United States,* supra, pág. 143. En *Kopel* v. *Bingham,* 211 U. S. 468, la Corte Suprema resolvió que aunque Puerto Rico no era un territorio incorporado a los Estados Unidos, es un territorio completamente organizado y que el artículo 5278 de los Estatutos Revisados de los Estados Unidos "no era totalmente inaplicable", dentro del significado del artículo 14 de la Ley Foraker. Este caso sirve de entera autoridad si tal autoridad es necesaria para la conclusión de que un estatuto federal aprobado antes de que se hubiese hecho distinción entre territorios y territorios no incorporados, aplicable por sus términos a cualquier "estado o territorio", no puede ser "localmente inaplicable", no obstante el hecho de que Puerto Rico es un territorio no incorporado. Véanse también *American Railroad Company of Puerto Rico* v. *Didricksen,* 227 U. S. 145, y *National City Bank* v. *Domenech,* 47 D. P.R. 29.

En el caso de *Peck Steamship Line* v. *New York & P. R. S. S. Co.,* 2 P. R. Fed. 109, 128, resuelto en 1906, el Juez Rodey de la Corte de Distrito de los Estados Unidos para Puerto Rico dijo:

". . . Es difícil determinar qué es localmente inaplicable de aquella parte de la ley contra monopolios hecha extensiva a los territorios . . . A nuestro juicio, para los fines de esta decisión específica, carece de importancia si, como cuestión de hecho o de de-

recho, Puerto Rico cae enteramente dentro de la definición de un 'territorio organizado.' Si es o no suficientemente un territorio que cae dentro de las disposiciones del artículo 3 de la ley contra monopolios antes citada, que prohibe ciertos actos que impidan el tráfico o el comercio en cualquier territorio de los Estados Unidos, etc., es la cuestión a resolver en el presente caso.

"El Procurador General Knox, en su opinión respecto a marcas de fábrica, 23 Ops. Proc. General 635, dijo: 'Puerto Rico ha quedado plenamente organizado bajo una ley del Congreso que contiene en detalle la constitución de su gobierno, y organizado en su mayor parte sobre el plan adoptado para los territorios contiguos a los Estados de la Unión. De todo el tenor de esta Carta Orgánica surge la presunción de que una interpretación liberal de la disposición que hace extensivas las leyes de los Estados Unidos estaría en armonía con el espíritu del Congreso . . .

"El Procurador General Griggs, en junio 2, 1900, resolvió (23 Ops. Proc. Gen., pág. 169) que por virtud del artículo 14 de la Ley Foraker se hicieron extensivas a Puerto Rico las leyes de los Estados Unidos relativas a la organización y poderes de los bancos nacionales . . .

"El Sr. Hoyt, Procurador General Interino, en julio 15 de 1902 (24 Ops. Proc. Gen., pág. 86) resolvió que la Carta Foraker pone en vigor en Puerto Rico la ley de inmigración del Congreso del año 1882. Esta última es una ley que fué aprobada 18 años antes que el Acta Foraker (pág. 130).

"La Corte Suprema de los Estados Unidos, en el caso de J. Ribas e Hijo v. United States, 194 U. S. 315, 48 L. ed. 994, 24 Sup. Ct. Rep. 727, dijo: 'Una acción que podía instruirse bajo la ley Tucker (24 Stat. at L. 505, capítulo 359, U. S. Comp. Stat. 1901, pág. 752) contra los Estados Unidos ante una corte de distrito o de circuito de los Estados Unidos, cae dentro de la competencia de la Corte de Distrito de los Estados Unidos para Puerto Rico.' La Ley Tucker es extensa, conteniendo unos 15 artículos, y ninguna parte de ella se refiere a un territorio, sin embargo, de conformidad con las disposiciones de la Carta Foraker, que proveen que todas las leyes de los Estados Unidos que no sean localmente inaplicables serán ley en Puerto Rico y otorgan a dicha corte la jurisdicción de una corte de circuito y de distrito de los Estados Unidos (sección 34 del Acta Foraker), la Corte Suprema resolvió que la misma estaba en vigor en esta Isla.

"De ello se desprendería que Puerto Rico es en verdad más un

territorio organizado que algunas de las jurisdicciones más antiguas, puesto que tiene lo que ningún otro territorio, a excepción de Hawaii, posee; es decir, una corte separada de los Estados Unidos, es de presumirse que para hacer cumplir las leyes de los Estados Unidos como parte de su jurisdicción, enteramente distinta a las cortes insulares locales que constituyen de por sí un sistema local completo y amplio . . .

"En el presente caso no podemos ver cómo la ley contra monopolios sea de por sí localmente inaplicable. Por el contrario, es muy aplicable localmente y una disposición legal saludable malamente necesitada por la Isla de no estar ya en vigor. Por tanto, resolvemos que la ley del Congreso en cuestión, al menos para los fines de este litigio no es localmente inaplicable, según los términos de la demanda en este caso, y está, por lo menos aquella parte de la misma que se refiere a territorios, enteramente en todo su vigor en Puerto Rico (Pág. 132)."

Unos seis meses después de emitirse la decisión en el caso de Peck, la Legislatura Insular, quizá concurriendo con el criterio del Juez Rodey al efecto de que la Ley Sherman, de no estar ya en vigor en Puerto Rico era un estatuto saludable que la Isla necesitaba grandemente, o tal vez llegando independientemente a la misma conclusión, adoptó la ley local contra monopolios. Siete años más tarde el Congreso incluyó a Puerto Rico en la Ley Clayton. En esto no hubo coerción alguna. Un sistema de jurado quizá no sea aconsejable ni deseable en un "país hispano y de derecho civil." Hasta ahora no se ha sugerido razón alguna por qué una ley contra monopolios sea necesariamente inapropiada a las necesidades de tal país. Sea ello como fuere, tanto el pueblo de Puerto Rico en 1907 como el Congreso en 1914, han enunciado la opinión de que se necesitaba en Puerto Rico una ley contra monopolios. No estamos por ahora preparados para decir, más de un cuarto de siglo después de aprobarse la ley local y unas dos décadas después de adoptarse la Ley Clayton, que tanto el Congreso como la Legislatura insular estaban equivocados y que la Ley Sherman es "localmente inaplicable." Aún si pudiera decirse que la Ley Sherman era localmente

inaplicable en 1900, o en 1907, o en 1914, o en 1917, de ello no se desprende que lo sea hoy en día. Aún sin la actuación del Congreso o de la Legislatura local, los acontecimientos recientes, de los cuales podemos tomar conocimiento judicial como cuestión de historia contemporánea, tenderían hacia la conclusión de que actualmente la Ley Sherman no es localmente inaplicable.

Si la Ley Sherman por sí sola cubriera todo el campo de la ley local de 1907, entonces esa ley sería una tentativa fútil de reglamentar cuestiones que no eran materia propia de legislación. Si la ley local en algún momento estuvo en vigor, ella fué sustituída por la Ley Sherman, tal cual la misma fué suplementada y ampliada por la Ley Clayton. *El Paso & Northeastern Railway Co.* v. *Gutiérrez,* 215 U. S. 87.

No hemos pasado por alto el hecho de que en el presente caso no existe conflicto alguno entre la ley local y el estatuto federal. Es cierto que en el caso de Gutiérrez existía un conflicto entre la ley de Nuevo Méjico y la ley federal sobre responsabilidad de los patronos (Federal Employers' Liability Act). Sin embargo, la Corte Suprema, en vez de dar énfasis a este aspecto del caso, basó su decisión enteramente en el fundamento de que el estatuto federal que regula el comercio en los territorios había suplantado la ley territorial sobre la misma materia. Esta corte, desde luego, queda obligada por dicha decisión y la doctrina de la misma, que no aparece haber sido limitada o modificada por cualquier decisión posterior de la Corte Suprema, debe regir nuestra resolución en el presente caso.

La orden de la corte de distrito negándose a anular su orden restrictiva provisional anterior o aquella parte de la misma que otorga un remedio bajo las disposiciones de la ley local contra monopolios de 1907, como única base de tal remedio, debe ser anulada y, concediendo al Pueblo de Puerto Rico el beneficio de cualquier duda que pueda surgir respecto a ciertas cuestiones que no hemos discutido ni resuelto en la presente opinión, debe devolverse el caso para ulteriores pro-

cedimientos en la corte de distrito que sean de su competencia, adecuados en el presente recurso, y no inconsistentes con esta opinión.

El Juez Asociado Sr. Wolf disintió.*