EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* THE SHELL Co. (P. R.) LTD., ET ALS., acusados y apelados.

No. 5802.—*Sometido:* Diciembre 11, 1935.  *Resuelto:* Diciembre 20, 1935.

*R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelante; *Hartzell, Kelley & Hartzell, R. O. Fernánlez García* y *P. Juvenal Rosa*, abogados de la Pyramid Products, Inc. y otros; y *Jaime Sifre, Jr.,* y *Orlando J. Antonsanti*, abogados de The Shell Co. (P. R.) Ltd. y otros.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En 28 de mayo de 1934 el fiscal del distrito de San Juan formuló acusación contra varias personas por haber infringido la ley para proteger el comercio contra coacciones y monopolios, aprobada por la Asamblea Legislativa de Puerto Rico en 14 de marzo de 1907 (pág. 328, Comp. 2373).  El

delito imputado consiste en haberse confabulado las referidas personas para monopolizar, como en efecto monopolizaron, el tráfico y el comercio en la distribución y venta de gasolina en el municipio de San Juan y en los pueblos del distrito judicial de San Juan, Puerto Rico, dentro del año anterior a la iniciación de dicho procedimiento y antes de esa fecha.

Formularon los acusados excepciones perentorias contra la referida acusación, alegando, entre otras razones, que la corte carecía de jurisdicción para conocer de dicho proceso, porque la ley para proteger el comercio contra coacciones y monopolios, aprobada por la Asamblea Legislativa de Puerto Rico en 14 de marzo de 1907, nunca ha estado ni está en vigor, es y ha sido siempre nula, toda vez que la Asamblea Legislativa de Puerto Rico no tenía ni tiene facultad para aprobar legislación respecto a una materia sobre la que tiene jurisdicción exclusiva el Congreso de los Estados Unidos y sobre la que ya dicho Congreso ha legislado.

La Corte de Distrito de San Juan ordenó el sobreseimiento del caso por entender que la ley para proteger el comercio contra coacciones y monopolios, aprobada en marzo 14, 1907, carece de fuerza legal. Declara la corte inferior que la Ley Sherman, suplementada en 1914 por la Ley Clayton, es la que debe aplicarse, porque cubre todo el campo de la ley local, según fué declarado por este tribunal en el caso de *United Theatres Inc., v. Corte,* 47 D.P.R. 725.

Apeló El Pueblo de Puerto Rico contra esta resolución y ahora comparecen los apelados solicitando la desestimación del recurso, por considerarlo frívolo e improcedente.

La corte inferior está en lo cierto cuando dice, ajustándose a la opinión emitida por este tribunal en *United Theatres, Inc.* v. *Corte,* supra, que la Ley Sherman cubre todo el campo de la ley local. Hemos examinado detenidamente el estatuto federal y podemos decir que sustancialmente toda la ley de Puerto Rico está contenida en las secciones primera, segunda, cuarta, quinta, séptima y décimoquinta de

la referida ley. La sección tercera del estatuo federal declara ilegal todo contrato, combinación en forma de ''trust'', o de otro modo, o conspiración para cohibir o impedir el tráfico o comercio en cualquier territorio de los Estados Unidos o del Distrito de Columbia. Cualquier persona que efectúe un contrato, o lleve a cabo cualquier combinación o conspiración de esta naturaleza, será culpable de *misdemeanor,* pudiendo castigársele con una multa que no exceda de $500 o prisión que no exceda de un año, o ambas penas a discreción del tribunal. Hemos declarado que la Ley Sherman no es localmente inaplicable y que por lo tanto está en vigor en Puerto Rico, y hemos dicho, interpretando y acatando la doctrina sentada en *El Paso & N. E. Ry.* v. *Gutiérrez,* 215 U. S. 87, que la ley del Congreso es suprema, porque cubre todo el campo de la ley local. En realidad la misma materia ha sido objeto de legislación por ambos cuerpos legislativos: El Congreso nacional y la Legislatura de Puerto Rico. No hay duda de que a los acusados se les imputa un delito castigado por el estatuto federal y por el estatuto nuestro.

En *Davis* v. *Beason,* 133 U.S. 333, se alegó que las secciones 501 y 504 de los Estatutos Revisados de Idaho eran nulas, entre otras razones porque el Congreso había ejercido sus poderes legislativos sobre la misma materia. ''Ha sido ya establecido'', dijo el apelante en dicho caso, ''que cuando el Congreso ha ejercido sus facultades, el poder concurrente de la legislatura inferior cesa o se suspende; que las dos voluntades legislativas no pueden ejercerse al mismo tiempo sobre la misma materia y que el Congreso, dentro de su esfera, es 'la suprema ley del territorio'.'' Se citaron los casos *Ex parte McNiel,* 13 Wall. 236, 240; *Gilman* v. *Philadelphia,* 3 Wall. 713, 727; *Pennsylvania* v. *Wheeling, etc., Bridge Co.,* 18 How. 421, 430; *Railroad Co.* v. *Fuller,* 17 Wall. 560, 568. En la opinión del tribunal, escrita por el Juez Field, se dijo lo siguiente:

''A nuestro juicio no está abierta a objeción constitucional o legal la sección 501 de los Estatutos Revisados del territorio de Idaho, que

dispone que 'ninguna persona bajo tutela, *non compos mentis* o loca,' ni ninguna persona convicta de traición, delito grave o soborno en este territorio o en cualquier otro estado o territorio en la Unión, a menos que le sean restituídos sus derechos civiles; ni ninguna persona que sea bígama o polígama, o que enseñe, aconseje o aliente a cualquier persona o personas para que sean bígamas o polígamas o cometan cualquier otro crimen definido por la ley o para que ingresen en lo que se conoce como *plural or celestial marriage,* o que sea miembro de cualquier orden, organización o asociación que enseñe, aconseje o aliente a sus miembros o devotos o a cualquier otra persona a cometer el crimen de bigamia o poligamia o cualquier otro crimen definido por la ley, como un rito o ceremonia de tal orden, organización o asociación, o de otra manera, estará autorizada para votar en cualquier elección o para desempeñar cualquier posición o cargo de honor, confianza o emolumento dentro de este territorio.' Con excepción de las personas bajo tutela o locas, el estatuto simplemente excluye del privilegio de votar, o de desempeñar cualquier cargo de honor, confianza o emolumento, a aquellas personas que han sido convictas de ciertos delitos, y que han aconsejado una resistencia práctica a las leyes del territorio y justifican y aprueban la comisión de crímenes prohibidos por la ley. La segunda subdivisión de la sección 504 de los Estatutos Revisados de Idaho, que requiere que toda persona que desee inscribirse como elector tome un juramento afirmando que no pertenece a ninguna orden que aconseje o menosprecie la ley criminal del territorio, no está abierta a ninguna objeción legalmente válida sobre la cual se haya llamado nuestra atención.''

De acuerdo con la sección 504 del Estatuto Revisado de Idaho a que se refiere la Corte Suprema, la persona que desee inscribirse como elector debe, entre otras cosas, jurar que no es miembro de ninguna orden, organización o asociación que enseñe, aconseje o aliente a sus miembros, devotos o cualquier otra persona a cometer el delito de bigamia o poligamia o cualquier otro crimen definido por la ley, como un deber derivado de sus relaciones en concepto de miembro de tal orden, organización o asociación, o que practique bigamia o poligamia o *plural or celestial marriage* como un rito de tal organización.

Refiriéndose al estatuto del Congreso, continúa diciendo el Juez Field:

"La posición de que el Congreso ha cubierto, por sus estatutos, toda la materia de legislación punible contra la bigamia y poligamia, dejando nada a la acción territorial sobre la misma materia, no produce en nosotros la impresión de tener mucho peso. El estatuto del Congreso de marzo 22, 1882, enmendando una sección anterior de los Estatutos Revisados con referencia a bigamia, declara que 'ningún polígamo o bígamo, ni ninguna persona que tenga comercio carnal con más de una mujer, ni ninguna mujer que tenga comercio carnal con cualquiera de las personas descritas en dicha sección, en cualquier territorio u otro lugar sobre el cual los Estados Unidos tengan exclusiva jurisdicción tendrá derecho a votar en cualquier elección celebrada en tal territorio u otro lugar, o será elegible a elección o nombramiento, o tendrá derecho a desempeñar cualquier cargo o posición de pública confianza, honor o emolumento en cualquier territorio o lugar, o en los Estados Unidos.'

"Esta es una ley general aplicable a todos los territorios y otros lugares bajo la exclusiva jurisdicción de los Estados Unidos. No es su propósito restringir la legislación de los territorios sobre delitos similares o sobre los medios para su averiguación y prevención. Los casos en los cuales la legislación del Congreso sustituye la legislación de un estado o territorio, sin disposiciones específicas al efecto, son aquellos en los cuales la misma materia es el objeto de legislación por ambos poderes. Entonces la acción del Congreso puede ser considerada como cubriendo todo el caso. Pero aquí no existe nada de esto. La ley del Congreso nada dice acerca de enseñar, aconsejar y alentar la práctica de bigamia y poligamia, es decir, sobre ayudar y estimular la comisión de aquellos delitos, ni sobre la forma adoptada, por medio del juramento, requerido para la inscripción, a fin de evitar que las personas puedan con sus votos derrotar las leyes criminales del país."

Hemos citado el caso que antecede porque sostiene que no está sujeto a ninguna objeción constitucional o legal un estatuto local que entre otras cosas dispone que un bígamo o polígamo no tendrá derecho a votar en cualquier elección o para desempeñar cualquier posición o cargo de honor, confianza, o emolumento, dentro del territorio, a pesar de que el estatuto federal cubre, en este particular, el mismo terreno

al declarar que ningún polígamo o bígamo tendrá derecho a votar en cualquier elección celebrada en tal territorio u otro lugar o será elegible a elección o nombramiento o tendrá derecho a desempeñar cualquier cargo o posición de pública confianza, honor o emolumento en cualquier territorio o lugar, o en los Estados Unidos.

La corte, sin embargo, sienta el principio de que los casos en los cuales la legislación del Congreso sustituye la legislación local, sin disposiciones específicas al efecto, son aquéllos en los cuales la misma materia es objeto de legislación por ambos poderes. Entonces la acción del Congreso puede considerarse como cubriendo todo el campo de la ley local. "Aquí no existe nada de eso", dice el tribunal, añadiendo que la ley del Congreso nada dispone acerca de enseñar, aconsejar y alentar la práctica de bigamia o poligamia. En nuestro caso no podemos establecer esta distinción. La ley del Congreso cubre todo el campo de la ley local y necesariamente tenemos que mantener nuestra decisión en el caso de *United Theatres, Inc.* v. *Corte,* supra, acatando lo que a nuestro juicio constituye la doctrina sentada por el Tribunal Supremo de los Estados Unidos.

Sostienen los apelados que un estatuo de un estado puede coexistir con un estatuto local aunque los dos regulen la misma materia, por tratarse de dos entidades igualmente soberanas dentro de los respectivos límites de su jurisdicción, pero que tal cosa no sucede en cuanto a los territorios, que no son grupos o comunidades políticas con soberanía independiente, sino que dependen del poder del Congreso de los Estados Unidos que es en ellos la única autoridad soberana. De ello se deduce como colorario ineludible, a juicio de los apelados, que una vez que el Congreso ha legislado sobre una cuestión determinada, el territorio no puede dar paso alguno que implique siquiera la intención de legislar sobre el mismo asunto. En apoyo de esta teoría se cita el caso de *Grafton* v. *U. S.,* 206 U.S. 333, 51 L. Ed. 1091, donde la Corte Suprema de los Estados Unidos se expresó así:

"El Gobierno de los Estados Unidos no tiene poder, si no le ha sido concedido expresa o tácitamente por necesaria deducción, mientras que los estados pueden ejercer aquellos poderes que no son incompatibles con la Constitución de los Estados Unidos ni con una forma republicana de gobierno y que no han sido concedidos al gobierno general. Un delito contra los Estados Unidos puede solamente ser castigado bajo su autoridad y en los tribunales creados por sus leyes, mientras que un delito contra un estado puede ser castigado solamente por su autoridad y en sus cortes. El mismo hecho, según se sostuvo en el caso de Moore, puede constituir dos delitos, uno contra los Estados Unidos y otro contra el estado. Pero estas ·cosas no pueden decirse de las relaciones entre los Estados Unidos y las Filipinas. El gobierno de un estado no deriva sus poderes de los Estados Unidos, mientras que el gobierno de las Filipinas debe su existencia completamente a los Estados Unidos, y sus tribunales judiciales ejercen todos sus poderes por autoridad de los Estados Unidos. La jurisdicción y autoridad de los Estados Unidos sobre dicho territorio y sus habitantes para todo propósito legítimamente de gobierno, es suprema. De modo que los casos que sostienen que los mismos actos cometidos en un estado de la Unión pueden constituir un delito contra los Estados Unidos y también un delito distinto contra el estado, no se aplican a este caso, en que los dos tribunales que juzgaron al acusado ejercieron todos sus poderes bajo y por la autoridad del mismo gobierno, que es el de los Estados Unidos."

En el caso citado, un soldado del ejército de los Estados Unidos, acusado de haber dado muerte a un ser humano, fué juzgado y absuelto por una corte marcial. Posteriormente se presentó una acusación en el nombre de los Estados Unidos ante un juzgado de primera instancia. El acusado fué juzgado y condenado a doce años de prisión. Apeló ante la Corte Suprema del Archipiélago Filipino, alegando que había sido juzgado dos veces por el mismo delito. Confirmada la sentencia dictada por el tribunal de primera instancia y elevado el caso a la Corte Suprema de los Estados Unidos,. este tribunal revocó dicha sentencia y absolvió al acusado por entender que había sido juzgado dos veces por un mismo delito. Aunque los principios establecidos por el Tribunal Supremo puedan tener alguna relación con los principios aplicables al caso de autos, sin embargo, bueno es te-

ñer en cuenta que en el caso de Filipinas la controversia no versó sobre el predominio de una ley federal sobre el estatuto local, sino sobre el alegado derecho del acusado a no ser juzgado dos veces por un mismo delito.

Arguye el fiscal que el simple hecho de que el estatuto federal esté en vigor y tenga fuerza legal en Puerto Rico, y cubra la misma materia que el estatuto local, no puede tener la significación de que este último estatuto haya quedado sin efecto y sin fuerza legal alguna, si se tiene en cuenta que la ley local no está en conflicto con el estatuto federal. En apoyo de esta teoría se cita el caso de *Territory* v. *Long Bell Lumber Co.*, 22 Okla. 890, 99 P. 911, donde la Corte Suprema de Oklahoma aparece sosteniendo la ley del territorio contra monopolios aprobada algún tiempo después de hallarse en vigor la Ley Sherman. De la opinión emitida en el caso citado copiamos lo siguiente:

"Dentro de las limitaciones apuntadas, el poder legislativo concedido al gobierno local es tan extenso en un territorio como en un estado. La política del Gobierno es conceder la mayor oportunidad para el gobierno propio como una preparación hacia la estadidad.

"Así lo ha sostenido la Corte Suprema de los Estados Unidos en el caso de Clinton v. Englebrecht, 13 Wall. 434, 20 L. Ed. 659. La corte se expresó así: 'La teoría sobre la cual los diversos gobiernos en las porciones de los territorios de los Estados Unidos se han organizado, ha sido de dar a los habitantes todos los poderes de gobierno propio compatibles con la supremacía y supervisión de la autoridad nacional y con ciertos principios fundamentales establecidos por el Congreso.' Esta es, a nuestro juicio, una exposición correcta de la ley envuelta, y la determinación de la extensión concedida por el Congreso al territorio de Oklahoma sobre el derecho a legislar debe ser fijada interpretando los poderes específicamente concedidos en el artículo 6 de la ley orgánica, supra, tomado en conexión con la manifiesta política del gobierno de conceder la facultad de legislar sobre todas las materias de legislación anteriormente establecidas. Si la ley de la Legislatura territorial fué aprobada con el propósito de hacerla efectiva y ponerla en vigor por sus propias autoridades, la disposición para evitar combinaciones restringiendo el comercio no estuvo en conflicto y en modo alguno impidió a las autoridades fe-

derales hacer efectiva la ley del Congreso. Siendo ello así, se nos ocurre que no existe una buena razón para decir que la ley local fué anulada, en el momento de aprobarse, por la ley federal. No hay nada en el estatuto federal que proscriba o prohiba a la autoridad legislativa del territorio el derecho a legislar sobre una materia idéntica, ni existe esta prohibición en ninguna ley del Congreso sobre la cual se haya llamado nuestra atención. El derecho a legislar sobre esta materia y a hacer efectiva la legislación por sus propias autoridades es un derecho muy apreciable para los ciudadanos que habitan el territorio y no debe ser abolido por una interpretación forzada y arbitraria.''

La Corte Suprema de Oklahoma estudia detenidamente la cuestión planteada en una laboriosa opinión, sosteniendo con acopio de citas la vigencia del estatuto local. Ésta sería también nuestra opinión si no nos sintiéramos cohibidos por las decisiones del Tribunal Supremo de los Estados Unidos. Puede que estemos interpretando erróneamente la doctrina sentada por el alto tribunal, y si es así nos alegraríamos de habernos equivocado y de que se corrigiera nuestro error, pero hasta la fecha no se nos ha convencido de que hayamos errado en esa interpretación. El derecho de la legislatura y de las autoridades insulares a perseguir y castigar los monopolios que se cometan dentro de nuestra jurisdicción es realmente inapreciable. Así lo entendió nuestra Asamblea Legislativa cuando se permitió legislar sobre la materia. Es ésta una legislación saludable y necesaria que debiera hacerse efectiva a través de los tribunales insulares. Hay que convenir en que El Pueblo de Puerto Rico tiene un interés especial en llevar a los tribunales a los ciudadanos que violan sus propias leyes. Por mucho interés que pueda tener el gobierno nacional para perseguir esos delitos, puede darse el caso de que pasen inadvertidos para las autoridades federales o que por una circunstancia u otra no se despliegue la misma actividad y el mismo interés que debe esperarse de las autoridades locales.

Se alega que la apelación es frívola. No lo es, si se tiene en cuenta la importancia y trascendencia de la cuestión plan-

teada por los acusados y resuelta por el tribunal inferior; pero como ya este tribunal ha sentado su criterio sobre el particular ratificando la doctrina sostenida en el caso de *El Pueblo* v. *Galanes et al.,* 15 D.P.R. 390, *nos vemos obligados a desestimar el recurso interpuesto.*

El Juez Asociado Señor Wolf disintió. *