Luisa de Jesús López, peticionaria y apelante, Ex Parte; Rosario, Carmen, Gregoria y Calixto de Jesús, representados por su madre Aurea Estrella Colón, opositores.

Núm. 9631.—*Sometido:* Abril 2, 1948. *Resuelto:* Abril 29, 1948.

*Arturo Ortiz Toro* y *Luis López de Victoria,* abogados de la apelante; *Francisco R. Flores,* abogado de los opositores, apelados.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Antonio de Jesús López, vecino de Utuado y farmacéutico de profesión, falleció intestado en uno de los hospitales de San Juan allá para el 9 de abril de 1946. Tramitada la declaratoria de herederos de rigor, su viuda, Luisa de Jesús López, y sus nietos Rosario, Carmen, Gregoria y Calixto, menores de edad, por derecho de representación,[1] fueron declarados sus únicos y universales herederos. Entre los bienes dejados por el finado Antonio de Jesús López existen cuatro bonos de los Estados Unidos, adquiridos en 1944, mientras éste estaba casado con la peticionaria apelante. Dos de esos bonos son de $1,000 y dos de $500 y todos son pagaderos a "Lcdo. Antonio de Jesús López *or* Mrs. Luisa de Jesús López, Utuado, P. R." Decretada la administración judicial de los bienes del finado y dictada en 15 de julio de 1947 resolución aprobatoria del proyecto de partición radicado, se ordenó que los referidos bonos quedaran depositados en la secretaría de la corte hasta que se resolviera, mediante sentencia definitiva, si el importe de los mismos pertenece a la

---

[1] Su único hijo, Porfirio de Jesús de Jesús, había fallecido en 9 de septiembre de 1944, siendo hijos de éste los menores arriba mencionados.

extinta sociedad de gananciales o exclusivamente a la peticionaria Luisa de Jesús López. Posteriormente la referida corte dictó en 10 de septembre de 1947 resolución al efecto de que dichos bonos eran bienes gananciales y que en su consecuencia a la viuda correspondía la mitad del valor de los mismos, debiendo la otra mitad repartirse de acuerdo con la ley local. De esta última resolución apeló la viuda y en apoyo de su recurso sostiene que la Corte de Distrito de Arecibo erró al no resolver que los citados bonos pertenecen exclusivamente a ella.

Conforme indica la apelante, la cuestión que está ante nos es una de carácter novel en Puerto Rico. Sin embargo, cuestiones similares han surgido en múltiples ocasiones en los distintos estados de la Unión americana.

Se admite por las partes la facultad del Gobierno de los Estados Unidos bajo la Constitución Nacional para expedir los bonos en cuestión. Igualmente aceptan que la venta y adquisición de esos bonos constituye un contrato de préstamo entre dicho Gobierno y el comprador de los mismos. Asimismo, que de acuerdo con la ley el Secretario del Tesoro de los Estados Unidos tiene plenos poderes para aprobar y promulgar reglamentos en relación con ellos y que tales reglamentos tienen fuerza de ley y forman parte del contrato de préstamo que surge entre los adquirentes de los bonos y el Gobierno.

Ahora bien, dispone el Código Civil que "mediante la sociedad de gananciales, el marido y la mujer harán suyos por mitad, al disolverse el matrimonio, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio." También, que los descendientes legítimos y la viuda son herederos forzosos, y que los parientes de una persona tienen derecho a sucederle por representación en todos los derechos que tendría esa persona si viviera. Artículos 1295, 736 y 887 del Código Civil, edición de 1930.

Según la sección 757c del título 31 del Código Anotado de los Estados Unidos (31 U.S.C.A. sección 757c, 1947 *Cumulative Annual Pocket Part,* pág. 168), ''(a) El Secretario del Tesoro, con la aprobación del Presidente, queda autorizado para expedir, de tiempo en tiempo, por conducto del servicio postal o en cualquier otra forma bonos de ahorro de los Estados Unidos y certificados de ahorro del Tesoro de los Estados Unidos, cuyo producto será utilizado para hacer frente a los gastos públicos autorizados por ley. . . .''. Esa misma sección autoriza al Secretario del Tesoro de los Estados Unidos a aprobar reglamentos para implementar los preceptos de ella.

Por el Artículo 1, Sección VIII, párrafo 2 de la Constitución de los Estados Unidos se faculta al Congreso para ''contraer empréstitos sobre el crédito de los Estados Unidos''. De manera que es indiscutible, y así lo admiten las partes, que el Gobierno Federal actuó plenamente dentro de sus facultades al emitir los bonos en cuestión. Éstos son, desde luego, prueba prima facie de la existencia de un contrato de préstamo, en el cual el adquirente de los bonos es el acreedor y el Gobierno de los Estados Unidos el deudor.

De acuerdo con la sección 315.2 del reglamento dictado por el Secretario del Tesoro de los Estados Unidos en relación con los bonos emitidos por el Gobierno de los Estados Unidos,[2] el nombre y dirección postal completo del dueño, así como el nombre del condueño o beneficiario de los mismos, de haberlos, y la fecha en que los bonos son librados figurarán en éstos al tiempo de ser expedidos por un agente autorizado. La forma de registro utilizada deberá expresar el verdadero dueño del bono y el interés que se tenga en el mismo y, excepto cuando dicho reglamento proveyere lo contrario, tal forma de registro se considerará como concluyente en cuanto al dominio e interés en los bonos. También dispone

---

[2] *Code of Federal Regulations of the United States, Cumulative Supplement,* títulos 28–32, págs. 9017 y siguientes.

el reglamento (sección 315.3) que podrán ser designadas como dueños, condueños o beneficiarios solamente las personas residentes en Estados Unidos, incluyendo sus territorios y posesiones insulares, así como en la zona del Canal de Panamá y en las Islas Filipinas, y los ciudadanos americanos que residan temporalmente en el extranjero. Continúa disponiendo el reglamento (sección 315.4*b*) que los bonos pueden ser expedidos a nombre de dos (pero no más de dos) personas en forma alternativa como condueños, como por ejemplo "John A. Jones or Mrs. Ella S. Jones". También provee en su sección 315.32 *a* y *b* que en vida de ambos condueños los bonos serán pagaderos a cualquiera de ellos y que "si cualquiera de los condueños muriere sin haber presentado y entregado el bono para su redención a un banco de la reserva federal o al Departamento del Tesoro, *el condueño supérstite será reconocido como el dueño único y absoluto del bono* (*as the sole and absolute owner of the bond*), *y el pago le será hecho a ese condueño solamente.*" (Bastardillas nuestras.)

La cuestión en controversia no es, sin embargo, si el importe de los bonos es o no propiedad ganancial, sino a quién debe corresponder a la muerte del esposo, que era uno de los condueños, aquella mitad que en vida de él le perteneció, si a sus decendientes legítimos y a su viuda o si exclusivamente a ésta. Sobre la mitad correspondiente a la viuda no hay disputa alguna en este caso, ya que aquí ella resulta ser tanto la cónyugue como la condueña supérstite.

Solamente hemos hallado tres casos que sostienen que los preceptos del reglamento del Secretario del Tesorero tienen por miras únicamente proteger los derechos del Gobierno de los Estados Unidos en relación con la persona a la cual ha de pagarse el importe de los bonos al ser éstos redimidos; que el efecto de ese reglamento cesa una vez que se efectúa el pago y que tal reglamento en manera alguna

puede afectar lo preceptuado en las leyes del estado donde reside o muere el dueño, condueño o beneficiario de los bonos. Ellos son *Deyo* v. *Adams et al.*, (New York, 1942), 178 Misc. 859, 36 N. Y. Supp.2d 734; *Decker* v. *Fowler*, (Washington, 1939), 92 P.2d 254 y *Sinift* v. *Sinift*, (Iowa, 1940), 293 N. W. 841. El efecto de las opiniones emitidas en los dos primeros, sin embargo, fué abrogado poco después por las asambleas legislativas de los estados de Nueva York y Washington. 40 McKinney's *Consol. Laws of New York, Ann.* (Supp., 1943), sec. 24.5 y *Washington Rev. Stat.* (*Remington Supp.*, 1943) secs. 11548-60, 11548-61. Además, esos tres casos han sido intensamente censurados y no han sido seguidos por ningún otro estado. En Nueva York, desde luego, tampoco han sido seguidos. *In re Staheli's Will*, 57 N.Y. Supp.2d 185; *In re Fliegelman's Will*, 55 N.Y. Supp.2d 139; *In re Kalina's Will*, 53 N. Y. Supp.2d 775; *In re Karlinski's Estate*, 43 N. Y. Supp.2d 40; *In re Deyo's Estate*, 42 N. Y. Supp.2d 379.

Según el peso abrumador de las autoridades que se pronuncian sobre la materia, cualquier reglamento del Secretario del Tesoro de los Estados Unidos aprobado en armonía con la ley que le concede la facultad de hacerlo, tiene fuerza y eficacia de ley; tanto la ley que autoriza la emisión de los bonos como el reglamento adoptado a tenor de la misma, forman parte de los contratos de préstamo existentes entre los adquirentes de los bonos y el Gobierno de los Estados Unidos(3) y siendo éste una de las partes contratantes, el contrato se convierte en uno federal y se rige necesariamente por las leyes y reglamentos federales; y como tales contratos de préstamos se rigen por la ley federal y su reglamento y éstos por disposición taxativa y clara del Artículo VI, pár. 2, de la Constitución de los Estados Unidos serán la ley suprema

---

(3)Cf. *Torres* v. *Fernández*, 65 D.P.R. 622, 631; *Pueblo* v. *Peñagarícano*, 54 D.P.R. 613; *Bas* v. *Corte Municipal y Hoyo, Int.*, 50 D.P.R. 315; *Avilés* v. *Hijos de Rafael Toro, S. en C., et al.*, 27 D.P.R. 671; *Quiñones* v. *Castillo et al.*, 16 D.P.R. 493, 504.

del país,(⁴) las leyes estatales, mientras estén en conflicto con ellos, están supeditadas a lo provisto por la ley y por el reglamento del Tesoro. Véase *Tim* v. *Long Branch et al.,* 171 A.L.R. 320, 53 A.2d 164; *Morris* v. *Jones,* 329 U.S. 545,553, 91 L. Ed. 488, 168 A.L.R. 656, 664, 67 S. Ct. 451; 56 Am. Jur. sección 19, pág. 146 y 11 Am. Jur. sección 42, pág. 649. Como en el indicado reglamento se dice claramente que cuando un condueño muere el otro será considerado como el único y absoluto dueño, tenemos que concluir, en armonía con esas autoridades y con el reglamento, que los bonos aquí envueltos son de la exclusiva propiedad de la peticionaria Luisa de Jesús López. Son en verdad tantos los casos que llegan a la conclusión aquí enunciada, que bastará con citar los siguentes: *Harvey* v. *Rackliffe* (Maine, 1945), 161 A.L.R. 296, 41 A.2d 455; *In Re Briley's Estate* (Florida, 1945), 21 So.2d 595; *Myers* v. *Hardin,* (Ark., 1945), 186 S.W.2d 925; *Davies* v. *Beach* (California, 1946), 168 P.2d 452; *Conrad* v. *Conrad* (Cal., 1944), 152 P.2d 221; *Ervin* v. *Conn.* (North Carolina 1945), 34 S.E.2d 402; *In re Fliegelman's Will* (New York, 1945), supra; *In re Kalina's Will* (New York, 1945), supra; *In re Deyo's Estate* (New York, 1943), supra; y *United States* v. *Dauphin Deposit Trust Co.* (Penna., 1943), 50 Fed. Supp. 73; y los en ellos citados.

En *Conrad* v. *Conrad,* supra, (Cal., 1944), por ejemplo, se dice: ''En los casos de otras jurisdicciones que establecen la que hemos calificado de 'regla de la mayoría', se ha resuelto que cuando muere el condueño que suministra el dinero para pagar los bonos éstos pertenecen al condueño supérstite, sin que corresponda interés alguno a la sucesión del finado. Esos casos resuelven que la cuestión no es una de donación,

---

(⁴)''Artículo VI.

1. .

2. Esta Constitución, las leyes de los Estados Unidos, que en virtud de ella se dictaren, y todos los tratados celebrados o que se celebraren bajo la autoridad de los Estados Unidos, serán la ley suprema del país. Los jueces de cada Estado estarán sujetos a lo que ella disponga, sin que obsten las Constituciones o leyes de los Estados.''

sino de contrato, según los reglamentos federales, disponiendo éstos un dominio absoluto a favor del condueño que sobreviva y que la muerte termina todo interés del otro condueño. Algunos de los bonos en esos casos fueron expedidos a dos personas como condueñas y otros al adquirente, y a la muerte de éste, a determinado beneficiario. No puede hacerse distinción lógica entre los derechos de los condueños o de un beneficiario supérstite.'' Se citan en seguida innumerables casos que sostienen ese criterio.

Más tarde el referido caso de *Conrad* v. *Conrad*, se expresa así:

"Los reglamentos del Tesoro que hemos citado más arriba no fueron aprobados solamente para protección del Tesoro ni para simplificar su tarea de determinar a quién han de pagarse en caso de que muera la persona a cuyo nombre los bonos están registrados. Los reglamentos tienen el efecto ulterior de definir los derechos del dueño a cuyo nombre los bonos estén inscritos y de los beneficiarios de éstos entre sí, pues estos derechos *inter sese* son reflejo de la obligación contractual de los Estados Unidos para con el dueño y para con el beneficiario individualmente. El título del dueño de los bonos y su causa de acción contra los Estados Unidos se han extinguido con su muerte; el beneficiario se convierte por ende en dueño único y absoluto.''

Estamos enteramente contestes con el criterio enunciado por el caso que acabamos de citar y por todos los demás que se expresan en armonía con éste. Nuestra ley insular debe ceder ante el imperio de legislación federal hecha extensiva a esta Isla. Cf. *Ávila* v. *Tribunal, etc.,* ante, pág. 11; *Latoni* v. *Corte Municipal,* 67 D.P.R. 140; *Pueblo* v. *The Shell Co. (P.R.) Ltd.,* 49 D.P.R. 226; *Dávila* v. *Corte,* 43 D.P.R. 554; y *Ex Parte Coll,* 11 D.P.R. 51. Indiscutiblemente esto ha de ser así. Cuando el Gobierno Federal emite bonos lo hace con el fundamental propósito de realizar importantes proyectos nacionales que tienen que ver, de ordinario, con la existencia misma de la nación. Si se resolviera que esos bonos son afectados por las leyes estatales, ello tendría por resultado el

darles distinto *status* en cada estado de la Unión. Tal interpretación suscitaría innumerables cuestiones sobre la validez de los bonos y menoscabaría muy de cerca la facultad de tomar dinero a préstamo conferídale al Congreso por la Constitución. Conforme se dijo en *United States* v. *Dauphin Deposit Trust Co.,* 50 F. Supp. 73: "Estos bonos se expiden y se venden en todos los Estados Unidos. El aplicar a la expedición y venta de ellos las leyes estatales, daría lugar a diversidad de reglas en torno al título y redención de los mismos y sometería todo el plan financiero del gobierno Federal a incertidumbre excepcional, haciendo que transacciones idénticas estuvieran sujetas a los caprichos de los distintos estados."

Cuestión similar a la que nos ocupa estuvo ante la consideración de la Corte de Reclamaciones de los Estados Unidos en el caso de *Warren* v. *United States,* 68 Ct. Cl. 634. Dicha corte resolvió que el caso que tenía ante sí era simplemente uno de contrato y que parte del mismo lo constituían la ley del Congreso y el Reglamento del Tesoro previamente adoptados; que tal Reglamento era consistente con dicha ley y no violaba los fines de la misma, teniendo, en su consecuencia, eficacia y fuerza de ley y formando parte del contrato celebrado. También resolvió esa corte que al negarse a pagar los certificados a la albacea del adquirente, el Secretario del Tesoro actuó en armonía con los términos del contrato. La petición de la albacea fué por ende declarada sin lugar. Llevado el caso al Tribunal Supremo de Estados Unidos éste se negó a expedir un auto de certiorari. 281 U.S. 739, 50 S. Ct. 346, 74 L. Ed. 1154.

*La resolución apelada será revocada y se dictará sentencia declarando que la dueña única y absoluta de los cuatro bonos de los Estados Unidos aquí envueltos lo es la peticionaria Luisa de Jesús López.*