María Ronda Vda. de Blondet, demandante y apelada, *v.* Mercedes Torres Vda. de Blondet, Ivelisse Luciana Blondet Torres, Isabel Blondet Torres, José Joaquín Blondet Torres, Margarita Blondet de Quintero, Dolores Blondet de García, Julia Blondet de Pizá y Ricardo H. Blondet, demandados y apelantes los primeros seis.

Núm. 10117.—*Sometido:* Mayo 12, 1950. *Resuelto:* Julio 5, 1950.

*Marcelino Romany*, abogado de Mercedes Torres Vda. de Blondet, Ivelisse, Isabel y José Joaquín Blondet Torres; *Lionel Fernández Méndez*, abogado de Margarita Blondet; *Adolfo García Veve*, abogado de Dolores Blondet; *José Ramírez Santibáñez*, abogado de Julia Blondet; *Ricardo H. Blondet, pro se; Córdova & González*, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La cuestión a determinar en este caso es si cinco bonos Serie E, de $1,000 cada uno, expedidos por los Estados Unidos, pertenecen a María Ronda viuda de Blondet o a la Sucesión de Carlos H. Blondet. Los bonos fueron adquiridos por Blondet antes de su muerte. Fueron expedidos a nombre de "Mrs. María R. de Blondet". Al ocurrir la muerte de Blondet, se nombró un administrador judicial y los bonos pasaron a manos de éste. Al cerrarse la administración judicial, el administrador depositó los bonos en la secretaría del Tribunal del Distrito de San Juan, para ser entregados a quien correspondiera.

La viuda radicó demanda ante la corte inferior solicitando sentencia declaratoria al efecto de que los bonos le pertenecían. Algunos miembros de la sucesión radicaron una contestación, alegando que la mitad del producto de los bonos pertenecía a la sucesión, de conformidad con una estipulación suscrita por la demandante y los demandados. La corte inferior declaró con lugar la moción de la demandante solicitando sentencia sumaria, y contra dicha sentencia apelaron los miembros de la sucesión que radicaron la contestación.

El primer señalamiento es que la corte inferior cometió error al no dar vida a un supuesto contrato efectuado entre

la viuda y los herederos demandados que surge de la estipulación, de conformidad con la cual, según los apelantes, la corte inferior adjudicó dichos bonos a los diversos herederos en la proporción convenida entre la viuda y los demás herederos.

■■ Es indiscutible el hecho de que, en ausencia de cualquier convenio o contrato en contrario hecho por la viuda, estos bonos le pertenecían exclusivamente al ocurrir la muerte de Carlos H. Blondet. *De Jesús, Ex parte; De Jesús, Opositores,* 68 D.P.R. 697; véase *Wissner* v. *Wissner,* 338 U.S. 655. De los autos surge, sin embargo, que antes de resolverse el caso de *Ex parte de Jesús,* las partes, incluyendo a la demandante, creían que los bonos eran propiedad ganancial. Fueron tratados por el administrador como bienes hereditarios, y así fueron incluídos en la planilla de contribución de herencia. Pero esto meramente significaba que todas las partes envueltas, la viuda inclusive, habían interpretado erróneamente la ley en cuanto a quién era el dueño de los bonos. Ciertamente esto no la despojaba de sus derechos sobre los mismos si actuaba diligentemente para protegerlos, a no ser que en alguna forma los vendiera o los cediera.

Los apelantes sostienen que ella dispuso de su exclusivo interés en los bonos en virtud de una estipulación radicada en el procedimiento de administración judicial. La parte dispositiva de la estipulación dice que: (1) se da por terminada la administración judicial y se entregan "los bienes" a los herederos; (2) se modifica la participación de los herederos de suerte que los herederos de José H. Blondet tengan la misma participación en el tercio de mejora de los bienes de Carlos H. Blondet que sus otros cuatro hijos; (3) se ordena la inscripción de los bienes a favor de las partes envueltas, en las proporciones convenidas. A tenor con esta estipulación, la corte inferior dictó la correspondiente sentencia, ordenando al administrador judicial que entregara inmediatamente a los herederos de Blondet "los bienes hereditarios" que se encontraban bajo su administración.

No podemos interpretar esta estipulación como que es un contrato por el cual la viuda cedió, vendió o traspasó algo a alguien. Dice la estipulación que cuatro de los hijos ceden parte de su participación en el tercio de mejora a la sucesión del quinto hijo, de manera que todos los hijos sean tratados en igual forma. Pero allí no se liquidó la sociedad de ganan-ciales. Tampoco dice o determina la estipulación en forma alguna, en cuanto a los bienes en manos del administrador, cuáles eran privativos, cuáles eran gananciales, o cuáles for-maban parte de los "bienes hereditarios" a ser entregados a los herederos.

Es obvio que el propósito de la estipulación fué primor-dialmente darle al quinto hijo una participación igual y sacar los *bienes hereditarios* de la administración judicial. Pero nada había en la estipulación que afectara los intereses de la viuda: ni le aumentó ni le disminuyó sus derechos. En resu-men, sencillamente dicha estipulación no fué un convenio al efecto de que determinadas partidas, tales como los bonos, que no se mencionan en la misma, sean clasificadas como parte de los bienes hereditarios. No podemos entresacar de la estipulación un contrato al efecto de que la viuda renuncia sus derechos legales a la exclusiva pertenencia de los bonos. Por consiguiente ella estaba en libertad más tarde de hacer valer su derecho a dichos bonos, según lo ha hecho en este recurso de sentencia declaratoria. Bajo las anteriores cir-cunstancias, no creemos que *Arandes* v. *Báez*, 20 D.P.R. 388, *Martínez et al.* v. *El Registrador de Arecibo*, 27 D.P.R. 841, y *Soriano et al* v. *Rexach et al.*, 23 D.P.R. 573, citados por los apelantes, sean de aplicación aquí.

Bajo este error los apelantes también arguyen que debe-mos reconocer un fideicomiso resultante en el producto de los bonos a favor de los miembros de la sucesión. Pero, por los motivos ya expuestos, nada encontramos en la estipulación que justifique ese resultado. Tampoco podemos decir que nuestra ley de gananciales nos obliga a llegar a esta conclu-sión; así hacerlo equivaldría a dejar sin valor alguno nues-

tra decisión en *Ex parte de Jesús*, supra. No podemos convenir con los casos citados por los apelantes, en tanto en cuanto resuelven lo contrario. (¹)

■ El segundo error señalado es que la corte inferior erró al no resolver que en virtud de la estipulación y la sentencia dictada a tenor con la misma, la viuda estaba impedida de alegar que ella era la dueña exclusiva de los bonos. Pero aquí la viuda nada dijo o hizo para inducir a error a los herederos o persuadirlos a cambiar su posición. En consecuencia, está ausente aquí el elemento esencial de la representación por parte de la viuda. La verdad es que *todas* las partes envueltas actuaron a base de un error de derecho. Pero esto no autoriza a los herederos a obstaculizar a la viuda en el ejercicio de sus derechos, cuando ella posteriormente los descubre y diligentemente procura obtener su remedio. Véase *Hopgood* v. *Porto Rican and American Ins. Co.*, 60 D.P.R. 329, 335.

■ Tampoco podemos decir que el haber pagado el administrador contribución de herencia sobre una suma que incluía estos bonos, opere como un impedimento contra la demandante. Suponiendo que la contribución insular de herencia sea de aplicación a estos bonos, a lo sumo los otros herederos tendrían derecho a que la viuda les reintegre aquella pequeña parte de la contribución total atribuíble a dichos bonos.

Los errores tercero y cuarto son (*a*) que existía un fideicomiso resultante a favor de los apelantes y (*b*) que la corte inferior erró al dictar sentencia sumaria a favor de la demandante. Lo que hemos ya dicho es suficiente para disponer de estos errores.

*La sentencia de la corte de distrito será confirmada.*

---

(¹) *Cf. Succession of Geagan*, 33 So.2d 118, 122 (La., 1947); *Union Nat. Bank* v. *Jessell*, 215 S.W.2d 474 (Mo., 1948). Notamos que en este caso no está envuelta la cuestión de fraude y dejamos la misma pendiente. *Cf. Katz* v. *Driscoll*, 194 P.2d 822 (Calif., 1948); *Conrad* v. *Conrad*, 152 P.2d 221 (Calif., 1944).